**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ROBERT NELSON,

                                        Petitioner,

            - v -                                            9:19-CV-0870
                                                              (TJM/DJS)

EARL BELL, *Superintendent,*
*Clinton Correctional Facility,*

                                        Respondent.


**APPEARANCES:**                    **OF COUNSEL:**

ROBERT NELSON
Petitioner *Pro Se*
14-A-2085
Clinton Correctional Facility
Box 2001
Dannemora, New York 12929

HON. LETITIA JAMES                    MATTHEW B. KELLER, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

        *Pro se* Petitioner Robert Nelson was convicted by a jury of two counts of third-

degree Criminal Possession of a Controlled Substance and one count of fourth-

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Criminal Possession of a Controlled Substance.  Dkt. No. 14-1, State Court Record Vol. 1 ("SR1") at pp. 418-19; Dkt. No. 14-2, State Court Record Vol. 2 ("SR2") at pp. 797-98.[2]  Petitioner seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the ground that his Sixth Amendment right to Confrontation was violated by the trial court when it declared a witness unavailable after a *Sirois*[3] hearing and admitted her prior, unconfronted testimony into evidence.  Dkt. No. 1, Petition ("Pet.") at p. 5.[4]  Respondent has filed a Memorandum of Law in Opposition to the Petition.  Dkt. No. 12.  Petitioner has filed a Traverse.  Dkt. No. 18.  For the reasons that follow, this Court recommends that the Petition be **denied.**

## I. BACKGROUND

On September 16, 2013, New York state police stopped a vehicle in which Petitioner was a passenger.  SR2 at pp. 392 & 395-99.  Upon consent of the driver and owner of the vehicle, police conducted a search of the car, SR1 at p. 78, and found 587 individual packets of heroin, SR2 at pp. 383-84 & 440-42, in a purse on the floor of the backseat, SR1 at pp. 81-82.  All occupants of the vehicle, including Petitioner, were subsequently arrested.  *Id.* at p. 82.

---

[2] Citation to SR1 is to the Bates Numbers following "SR" at the bottom of the document; citation to SR2 is to the pagination assigned by the Court's CM/ECF system.

[3] "Under New York law, when a defendant is accused of causing the unavailability of a witness, the court will hold a pre-trial *Sirois* hearing to determine whether the defendant actually did procure the absence of the witness, in which case the admission of un-cross examined testimony of the absent witness will be permitted."  *Perkins v. Herbert*, 596 F.3d 161, 166-167 (2d Cir. 2010); *see also Matter of Holtzman v. Hellenbrand*, 92 A.D.2d 405, 415 (2d Dep't 1983); *People v. Sirois*, 92 A.D.2d 618 (2d Dep't 1983).

[4] Citations to the Petition are to the page numbers assigned by the Court's CM/ECF system.

During Petitioner's trial, the prosecution called cooperating witness Anna Garrow, one of the other passengers in the vehicle, to testify against Petitioner.  SR2 at p. 547. During Garrow's direct examination, her testimony began to depart from what she had previously told prosecutors.  *Id.* at pp. 564-66.  In a previous statement to Assistant District Attorney Daniel Rathbun ("ADA Rathbun"), she identified money wrapped up in a band as drug money.  *Id.* at pp. 608-09.  During trial, she denied making that statement and stated she never identified money in such a manner.  *Id.* at pp. 571-72.  The prosecution alleged her testimony changed as a result of threatening and manipulating letters[5] Petitioner sent Garrow and requested a *Sirois* hearing, which the court granted. *See id.* at pp. 587-88.  During the *Sirois* hearing, the prosecution presented letters exchanged between Garrow and Petitioner as evidence that Petitioner tampered with Garrow to dissuade her from testifying.  *Id.* at pp. 604-05.  They also proffered testimony from ADA Rathbun to establish the statements Garrow had previously made to him were different from the testimony she began to give at trial.  *Id.* at pp. 606-26.  After the *Sirois* hearing, the court declared Garrow unavailable due to Petitioner's misconduct, and her previous September 18, 2013 statement she gave to Investigator Todd McPhail was deemed admissible in lieu of her live testimony.  *Id.* at pp. 642-44.

Petitioner was convicted by a jury of two counts of third-degree Criminal Possession of a Controlled Substance and one count of fourth-degree Criminal Possession of a Controlled Substance.  *Id.* at pp. 797-98.  Petitioner was subsequently sentenced to

---

[5] These letters were admitted as evidence at trial, SR1 at p. 13, but neither party included them in the appeal to the Third Department.  There is, however, a list of quotes from particularly relevant letters, *id.* at pp. 500-02, as well as discussions during court proceedings about the content of the letters.

fifteen years in prison for counts one and two, and nine years for count three as a second felony offender, all to be served concurrently and followed by three years of post-release supervision.  *Id.* at pp. 821-22.  Petitioner then appealed to the New York Appellate Division, Third Department.  SR1 at p. 45.  Petitioner raised several issues on his appeal, including the violation of his constitutional right to confrontation.  *Id.* at p. 32.  The Appellate Division unanimously affirmed, finding the trial court properly deemed Garrow unavailable as a result of Petitioner's misconduct and that admission of Garrow's past statement "did not violate defendant's right to confrontation."  *People v. Nelson*, 156 A.D.3d. 1112, 1118 (3d Dep't 2017).  The New York Court of Appeals denied leave to appeal.  SR1 at p. 439.

## II.  STANDARD OF REVIEW

As an initial matter, Petitioner is proceeding with this writ of *habeas corpus* petition *pro se*, and accordingly should be held to "less stringent standards than formal pleadings drafted by lawyers."  *Bell v. Ercole*, 631 F.Supp.2d 406, 413 (S.D.N.Y. 2009) (quoting *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993)).  Moreover, the Court should "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments they suggest."  *Boddie v. New York State Div. of Parole*, 285 F.Supp.2d 421, 426 (S.D.N.Y. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).  While the standards may be less rigorous, the Court notes that "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)). The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts."  *Id.* at 413. A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### III. DISCUSSION

Petitioner's sole claim in this *habeas corpus* petition is based on an alleged violation of his Sixth Amendment right to confrontation when the trial court deemed cooperating witness Anna Garrow unavailable due to his own misconduct and

subsequently admitted her prior, un-cross-examined statement to police officers into evidence.  Pet.; Dkt. No. 18 at p. 2.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"  U.S. Const. amend. VI.  This provision of the Constitution bars the admission of out-of-court witness testimony unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine her.  *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  Furthermore, testimony for the purposes of the Confrontation Clause includes statements taken by police officers when "the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Crawford v. Washington*, 541 U.S. at 52 ("Statements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard.").  Statements not deemed testimonial are not subject to the requirement of confrontation and cross-examination under the Confrontation Clause.  *Crawford v. Washington*, 541 U.S. at 51.

However, the constitutional right to confrontation is not absolute.  The Supreme Court has long recognized the well-established doctrine of forfeiture by wrongdoing, whereby "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."  *Davis v. Washington*, 547 U.S. at 833; *see Crawford v. Washington*, 541 U.S. at 62 (acknowledging the Court's acceptance of the forfeiture by wrongdoing doctrine); *Reynolds v. United States*, 98 U.S. 145, 158 (1878)

("The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.  It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege.").  The Supreme Court has held the exception applies when the defendant "engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness."  *Giles v. California*, 554 U.S. 353, 367 (2008) (citing FED. R. EVID. 804(b)(6), which codifies the common law exception).  Such wrongdoing can be "through chicanery, threats, or actual violence."  *Chestnut v. Lamanna*, 2019 WL 5309964, at *3 (E.D.N.Y. Oct. 21, 2019); *see United States v. Dhinsa*, 243 F.3d 635, 651 (2d Cir. 2001); *United States v. Mastrangelo*, 693 F.2d 269, 272 (2d Cir. 1982).

If the forfeiture by wrongdoing exception applies, a defendant waives his constitutional right to confrontation, *see Davis v. Washington*, 547 U.S. at 833, and testimony which would ordinarily be protected under the Confrontation Clause is admissible without cross-examination by a defendant.  To allow otherwise would permit a defendant to benefit from his own misconduct, which is contrary to public policy and the underlying purpose of the Confrontation Clause.  *United States v. Dhinsa*, 243 F.3d at 652 (citing cases).

Here, as Respondent concedes, Dkt. No. 12 at p. 14, the statement Garrow made to Inv. McPhail, which was subsequently admitted into evidence, fits squarely within the definition of testimony under the right to confrontation set forth by *Crawford*.  Garrow gave a statement to the police on September 18, 2013, just after her arrest.  This was not during an ongoing emergency, as her conversation with Inv. McPhail occurred at the state

8

police barracks in Granville, SR2 at p. 657, several hours after all occupants of the vehicle had been arrested.  Moreover, while it is not explicitly stated in the record, the primary purpose of Inv. McPhail's interview with Garrow was likely to establish the events leading up to the arrest, which would be relevant to subsequent criminal prosecution.  We can discern this from the types of questions Inv. McPhail asked Garrow, *id.* at pp. 659-63, the answers to which are relevant to the prosecution of all defendants involved in the matter.  Thus, the statement Garrow made to Inv. McPhail is testimonial for the purposes of the Confrontation Clause.  Additionally, there is no dispute over the fact that Petitioner had no prior opportunity to cross-examine Garrow about her testimony.  Dkt. No. 12 at p. 14; Dkt. No. 18 at p. 4.

Turning to the forfeiture issue, the trial court in Petitioner's case declared Anna Garrow unavailable after a *Sirois* hearing.  During the hearing, the prosecution used letters between Petitioner and Garrow, written while both were housed in Washington County Jail, to demonstrate Petitioner threatened and manipulated Garrow into altering her testimony.  The Appellate Division categorized Petitioner's letters as "ranging from implied threats of violence to pointed requests for Garrow to lie during her trial testimony."  *People v. Nelson*, 156 A.D.3d. at 1118.  One such request reads, "[y]ou go to Court, don't say you know me, because I'm going to say I don't know you.  That night we got arrested was our first time ever meeting."  SR2 at pp. 642-43.  Additional testimony from ADA Rathbun revealed Garrow specifically stated she perceived some of these letters as threats and in fact underlined specific portions of the letters to highlight the content she found threatening.  *Id.* at p. 625.  These letters also demonstrated that

Garrow and Petitioner had been in a romantic relationship prior to their arrest, and Petitioner attempted to use that relationship as leverage to manipulate Garrow into changing her testimony. *Id.* at p. 643. The Appellate Division found "the evidence fully support[ed] County Court's determination that defendant used his close relationship with Garrow in order to pressure her into testifying falsely." *People v. Nelson*, 156 A.D.3d at 1118. Upon review of the record, that finding was well founded. Accordingly, the Appellate Division's determination that Petitioner caused Garrow's unavailability was not contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts. *See United States v. Aguiar*, 975 F.2d 45, 47 (2d Cir. 1992) (holding that the defendant waived his right to confrontation after sending threatening letters to a cooperating witness encouraging him to falsify his testimony).

Construing the Traverse liberally, Petitioner seems to contend that the trial court improperly deemed Garrow unavailable because the discrepancies in her testimony were not material to the prosecution's case and thus should not have been used to demonstrate he tampered with her. Dkt. No. 18 at p. 3. This argument is unfounded, however. Not only did the prosecution consider Garrow's inconsistencies relevant to its case, SR2 at pp. 633-34, but, more importantly, it was Petitioner's attempts to intimidate and manipulate Garrow that led to the trial court's decision to deem Garrow unavailable at the *Sirois* hearing, not the substance of her particular testimonial discrepancies. *Id.* at pp. 642-44.

Petitioner also appears to assert that unconfronted statements by a witness must be "sufficiently reliable" in order to be used as evidence against him, citing *Idaho v. Wright*,

497 U.S. 805 (1990).  Dkt. No. 18 at p. 3.  This argument fails, however, because the reliability requirement set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980), upon which the Supreme Court in *Idaho* relies, was abrogated by *Crawford*: "[The Clause] commands not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."  *Crawford v. Washington*, 541 U.S. at 61. Here, Petitioner forfeited his right to assess the reliability of Garrow's statements through cross-examination by rendering her unavailable through his own misconduct.

For the aforesaid reasons, the Appellate Division's decision on this issue was not contrary to clearly established Federal law or based on an unreasonable determination of the facts in light of the evidence.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2);[6] and it is further

---

[6] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[7] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  September 21, 2020
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).